**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Rondell T. Cramer,<br><br>    Petitioner,<br><br>v.<br><br>Jason Gunther,<br><br>    Respondent. | No. CV-24-02847-PHX-ROS (ASB)<br><br>**REPORT AND RECOMMENDATION** |

**TO THE HONORABLE ROSLYN O. SILVER, SENIOR UNITED STATES DISTRICT JUDGE:**

    Pending before the Court is Petitioner Rondell T. Cramer's pro se Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1). The Petition asserted two grounds for relief under the First Step Act ("FSA"). (*Id.* at 6, 8.) Petitioner is in the custody of the Federal Bureau of Prisons ("BOP"). Respondent timely filed an Answer to the Petition for Writ of Habeas Corpus and included therein a request to dismiss this matter (Doc. 11). Petitioner timely filed his Reply (Doc. 12). For the reasons that follow, the undersigned recommends the Petition for Writ of Habeas Corpus be denied and dismissed.

**I. BACKGROUND**

    Petitioner is serving a sentence of 60 months' imprisonment for a conviction in the United States District Court for the Eastern District of California for Unlawful Dealing in Firearms Without a License, in violation of 18 U.S.C. § 922(a). (Doc. 11-1, Att. 1 at 11-12.) Petitioner filed the habeas petition in this action on October 21, 2024. (Doc. 1.) At

the time he filed his Petition, Petitioner was incarcerated at Federal Correctional Institution-Phoenix ("FCI-Phoenix"), located in Phoenix, Arizona, in the District of Arizona. (*Id.* at 1.) Petitioner remains in the custody of the Federal Bureau of Prisons at FCI-Phoenix.[1] *See* Federal BOP, *Find an inmate*, https://www.bop.gov/inmateloc (last visited April 1, 2025).

In his Petition, Petitioner raises two grounds for relief, claiming that BOP is unlawfully refusing to apply FSA earned time credits ("ETCs") to his sentence. (*See* Doc. 1.) First, Petitioner claims that BOP's practice of "banking" ETCs until a prisoner reaches a low or minimum recidivism risk score, rather than applying credits to prisoners' sentences even if they are classified as medium or high risk, violates the FSA. (*Id.* at 6.) Petitioner asks the Court to invalidate this practice in light of the United States Supreme Court's decision in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 144 S. Ct. 2244 (2024). (Doc. 1 at 7.) Second, he asserts that BOP is refusing to apply credits he earned starting on the date he was sentenced until he arrived at his BOP designated facility. (*Id.* at 8-11.) He argues that the BOP regulation located at 28 C.F.R. § 523.42(a) contradicts the FSA. (*Id.* at 9-10.) Petitioner acknowledges that he did not pursue administrative remedies before filing the Petition, but states that the requirement should be waived because the remedy process would be futile. (*Id.* at 3-5.)

In opposition, Respondent puts forth various arguments. (Doc. 11.) Respondent contends that this Court lacks subject matter jurisdiction under 18 U.S.C. § 3625 and lacks authority to compel discretionary action by BOP. (*Id.* at 7-10.) Respondent also argues Petitioner lacks a liberty interest in his ETCs and failed to exhaust his administrative remedies. (*Id.* at 5-7, 10-11.) Finally, Respondent maintains that the Petition fails on the merits. (*Id.* at 11-15.)

Petitioner filed a Reply in which he challenges Respondent's contentions. (Doc. 12.) *Inter alia*, he notes a pending civil matter filed in the U.S. District Court for the

---

[1]  The Court takes judicial notice of the BOP Inmate Locator, which is publicly available on the BOP's website. *See United States v. Basher*, 629 F.3d 1161, 1165 n.2 (9th Cir. 2011) (taking judicial notice of same).

District of Columbia by the American Civil Liberties Union by federal prisoners in which the same arguments as Petitioner's are made. (*Id.* at 12.)

## II. DISCUSSION

Writ of habeas corpus relief extends a person in federal custody if the federal prisoner can demonstrate he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal prisoner may seek a writ of habeas corpus to challenge the manner of the execution of his sentence pursuant to 28 U.S.C. § 2241. *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000); *Tucker v. Carlson*, 925 F.3d 330, 331 (9th Cir. 1990) (challenges to the execution of a sentence are "maintainable only in a petition for habeas corpus filed pursuant to 28 U.S.C. § 2241"); *see also United States v. Giddings*, 740 F.2d 770, 772 (9th Cir. 1984) (holding that a petitioner may challenge the execution of a sentence by bringing a petition under 28 U.S.C. § 2241). Petitioner challenges the execution of his sentence.

### A. Subject Matter Jurisdiction

"Federal courts are always 'under an independent obligation to examine their own jurisdiction,' … and a federal court may not entertain an action over which it has no jurisdiction." *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). To determine the issue of subject matter jurisdiction, the Court considers the relevant statutory scheme and controlling case law.

Petitioner argues that BOP is failing to apply ETCs to his sentence in violation of the law. The FSA, enacted in 2018, included an amendment to 18 U.S.C. § 3624 concerning the FSA's creation of an earned time credit system. *Bottinelli v. Salazar*, 929 F.3d 1196, 1197 (9th Cir. 2019). The FSA added subsection (g) to 18 U.S.C. § 3624 for that purpose; § 3624(g) "details the criteria for when a prisoner becomes eligible, considering earned time credit, for transfer to prerelease custody or supervised release." *Id.* at 1198. Thus, FSA credits often operate to make a prisoner eligible for an earlier release date.

Persons who "suffer[] legal wrong because of agency action" may generally seek

judicial review of the agency action, unless another statute provides otherwise. *Reeb v. Thomas*, 636 F.3d 1224, 1226 (9th Cir. 2011) (quoting 5 U.S.C. § 702). In *Reeb*, the Ninth Circuit considered the effect of 18 U.S.C. § 3625 on a prisoner's ability to challenge a discretionary determination made by BOP under 18 U.S.C. § 3621 through a petition for habeas corpus under 28 U.S.C. § 2241. The Circuit observed that 18 U.S.C. § 3625 specifically states judicial review under the Administrative Procedure Act (5 U.S.C. §§ 701-706) does not apply to "'any determination, decision, or order' made pursuant to 18 U.S.C. §§ 3621-3624." *Id.* at 1227. The *Reeb* court continued, "[a] habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law." *Id.* (citing *Jacks v. Crabtree*, 114 F.3d 983, 985 n.1 (9th Cir. 1997) and *Reno v. Koray*, 515 U.S. 50, 61 (1995)). *Reeb* held that when a prisoner's "habeas petition alleges only that the BOP erred in his particular case," the district court lacks jurisdiction to adjudicate the merits of that petition. *Id.* at 1228-29. However, when a habeas petition alleges "that BOP action is contrary to established federal law, violates the United States Constitution, or exceeds its statutory authority," judicial review "remains available." *Id.* at 1228.

Under *Reeb*, this Court considers Petitioner's specific challenge in his instant Petition. 636 F.3d at 1228-29. Petitioner alleges that the BOP must apply his ETCs to his sentence despite his higher risk score because "[n]othing in 18 U.S.C. § 3632, 18 U.S.C. § 3585, or in any other applicable United States Code . . . permits, or even contemplates, the 'banking' or saving or non-application of ETCs under the FSA." (Doc. 1 at 7.) He also argues that 28 C.F.R. § 523.42(a) conflicts with the FSA because it states that an inmate may only begin to earn credits once they arrive at the designated Bureau facility where their sentence will be served. (*Id.* at 9-10.) Therefore, Petitioner is not only alleging that BOP erred in his particular case—he also contends that BOP practices and regulations conflict with the language of the FSA. (*Id.*) Because he alleges that these actions are contrary to federal law, the Court will not recommend that the Petition be dismissed for lack of jurisdiction. *See Reeb*, 636 F.3d at 1228.

### B. Lack of Liberty Interest, Lack of Judicial Authority to Compel Discretionary Agency Action

Respondent next argues that Petitioner lacks a liberty interest in FSA credits, and this Court cannot compel BOP to exercise its discretion in a certain manner. As discussed above, 18 U.S.C. § 3624 confers upon the BOP the discretion as to whether to release a prisoner to supervised release or place that prisoner in prerelease custody, and whether to grant Petitioner credits towards same. "[T]he failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest." *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999) (citing *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981)); *see Olim v. Wakinekoma*, 461 U.S. 238, 249 (1983) (no liberty interest created when government action is discretionary by statute); *see also Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). Similarly, the Court cannot compel BOP to take an action that is singularly within BOP's statutory discretion for the same principled reasons. The FSA confers with BOP, not the courts, the sole discretion to determine and apply credits that may result in transfer to prerelease custody or supervised release. *See, e.g.*, 18 U.S.C. §§ 3621, 3624 (vesting authority for determination of credits towards release and place of confinement with BOP). To the extent that Petitioner is asking the Court to order BOP to apply his ETCs in a specific way, the Court agrees with Respondent. However, the Petition asserts that BOP practices and regulations are contrary to the law. These arguments are not based on a liberty interest or discretionary BOP action—they challenge BOP's interpretation of the FSA. Thus, Petitioner's arguments may be further considered.

### C. Exhaustion

The *Reeb* court further observed that "[t]he BOP's Administrative Remedy Program, set forth at 28 C.F.R. §§ 542.10-19, provides a vehicle for aggrieved inmates to challenge such discretionary BOP determinations." 636 F.3d at 1227. Indeed, a federal prisoner must exhaust his administrative remedies through the Bureau of Prisons before

filing a § 2241 petition. *Fraley v. U.S. Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993). "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (internal citations omitted). A prisoner exhausts his administrative remedies by pursuing his claim in the Bureau of Prisons' four-tier process set forth at 28 C.F.R. §§ 542.10 *et seq*: first, the inmate must pursue the issue informally with institution staff (known as a BP-8); if unsuccessful at the first stage, the inmate must formally raise the issue with the warden (known as a BP-9); if unsuccessful with the second step, the inmate must bring the issue to the attention of the Regional Director (known as a BP-10); and finally, if unsuccessful at the regional level, the inmate must appeal to the Bureau of Prisons' General Counsel in Washington, D.C. (known as a BP-11).

Per Ninth Circuit case law, a federal prisoner must exhaust his administrative remedies through the Bureau of Prisons before filing a § 2241 petition, but "[e]xhaustion is not required if pursuing those remedies would be futile." *Fraley*, 1 F.3d at 925 (finding futility where BOP policy would have almost certainly resulted in continued denials throughout the administrative appeals process) (citing *Terrell v. Brewer*, 935 F.2d 1015, 1019 (9th Cir.1991)). "Although courts have discretion to waive the exhaustion requirement when it is prudentially required, this discretion is not unfettered." *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004) (internal citation omitted). In *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir.1981), the Ninth Circuit observed "there are a number of exceptions to the general rule requiring exhaustion, covering situations such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void."

Here, Petitioner acknowledges that he has not exhausted his administrative remedies, but he argues that doing so would be futile because "the BOP would undoubtedly enforce its own regulation, which is in direct conflict with the statutory mandates set forth

below herein." (Doc. 1 at 5.) Respondent asks the Court to deny the Petition because Petitioner has conceded his failure to exhaust. (Doc. 11 at 5-7.) However, undersigned is inclined to recommend that Petitioner's failure to exhaust be excused. Because the dispute here centers on the agency's interpretation and understanding of the law, the administrative remedies process would likely be inadequate to resolve this question. *See Huihui v. Derr*, No. 22-00541 JAO-RT, 2023 WL 4086073, at *2-3 (D. Haw. June 20, 2023); *Jobin v. Warden FCI-Mendota*, No. 1:23-cv-01700-WBS-SKO (HC), 2024 WL 1367902, at *2-3 (E.D. Cal. April 1, 2024). In addition, no other reasons to require exhaustion are present here.[2] Therefore, should the Court somehow find that Petitioner is not statutorily ineligible for relief, undersigned recommends that the failure to exhaust be waived in this case because administrative remedies would not adequately resolve the question at hand.

### D. Time Credits under the First Step Act

Having addressed jurisdiction, the Court's authority to review the claim, and exhaustion, undersigned will now turn to the merits of the Petition. Petitioner asserts that BOP's failure to apply ETCs for prisoners who have a medium or high risk of recidivism violates the FSA. He also asserts that the BOP regulation stating that prisoners cannot begin to earn credits until they have arrived at their designated facility conflicts with the FSA. Petitioner's claims fail for the reasons that follow.

#### 1. The First Step Act

With the enactment of the FSA, Congress charged the Attorney General with creating a risk and needs assessment system that would be used to: (1) determine each prisoner's recidivism risk as part of the intake process; (2) assess the risk of violent or serious misconduct of each prisoner; (3) individually assign appropriate programming for each prisoner; (4) periodically reassess prisoners' recidivism risk; (5) reassign programming based on new assessments; (6) provide incentives and rewards for

---

[2] "The courts under that doctrine may still require exhaustion if: (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *United States v. Cal. Care. Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983) (citations omitted).

participation; (7) determine when a prisoner may transfer to prerelease custody or supervised release; and (8) determine appropriate use of technology for those with dyslexia. 18 U.S.C. § 3632(a)(1)-(8).

The FSA provides: "A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities shall earn time credits . . . ." 18 U.S.C. § 3632(d)(4)(A). Subsection D identifies prisoners who are ineligible to receive time credits based on their convictions. *See* 18 U.S.C. § 3632(d)(4)(D). The FSA also defines which prisoners are eligible for prerelease custody or supervised release. *See* 18 U.S.C. § 3624(g)(1)(D)(i)-(ii). The statute requires that "the prisoner has been determined under the System to be a minimum or low risk to recidivate" to be eligible for prerelease custody or supervised release. *Id.*

Under the statute, eligible prisoners earn ten (10) days of credits for every thirty (30) days of "successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(i). The number of credits earned in each period of thirty days may increase if the prisoner maintains a low risk level. 18 U.S.C. § 3632(d)(4)(A)(ii). However, a prisoner cannot earn time credits for successful completion of programming "(i) prior to the date of enactment of [the First Step Act]; or (ii) during official detention prior to the date that the prisoner's sentence commences under section 3585(a)." § 3632(d)(4)(B). According to 18 U.S.C. § 3585(a), "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."

Petitioner challenges the BOP regulation that governs when a prisoner may begin earning FSA time credits. (Doc. 1 at 8-11); *see* 28 C.F.R. § 523.42(a). That regulation states: "An eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served)." *Id.* Petitioner challenges

1 a difference between the statute and the regulation: the statute dictates that a term of
2 imprisonment commences when a prisoner arrives in custody "awaiting transportation to"
3 the facility where the sentence will be served, 18 U.S.C. § 3585(a), while the regulation
4 states that it commences only once a prisoner arrives at the facility where the sentence will
5 be served. 28 C.F.R. § 523.42(a). Petitioner argues that the regulation contravenes
6 Congress's intent for prisoners to begin earning credits from the time they are sentenced,
7 even if they have not yet arrived at their designated facility. (Doc. 1 at 8-11.)

**2. Analysis**

Since the *Loper Bright* decision, courts may no longer defer to agencies' interpretation of ambiguities in statutes. Instead, courts must use "the traditional tools of statutory construction . . . to resolve ambiguities." *Loper Bright*, 603 U.S. at 373. Courts will "exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Id.* at 412.

Petitioner first asserts that under the FSA, BOP must apply his ETCs to his sentence even though he does not have a low or minimum risk level on the PATTERN assessment. (Doc. 1 at 6-7.) Petitioner has been determined to be a high recidivism risk level. (Doc. 11-1, Att. 3) (noting "HIGH RISK RECIDIVISM LEVEL"). Petitioner states that like many other inmates, despite completing programming and maintaining good conduct, he will never be able to achieve a minimum risk score due to unchangeable factors like criminal history and age. (Doc. 1 at 6.) Respondent contends that "[w]hile Petitioner may *earn* time credits under the FSA, he is currently statutorily precluded from *applying* those earned time credits pursuant to the plain language of the FSA because he has been deemed a high risk for recidivism under [BOP's] risk and needs assessment tool." (Doc. 11 at 11) (emphasis in original).

The Court agrees with Respondent. The FSA defines which prisoners are eligible to earn credits in 18 U.S.C. § 3632(d)(4). "*Loper Bright* is not implicated because the FSA itself requires that individuals must have a low risk of recidivism for the earned time credits to be applied." *Tennigkeit v. Taylor*, No. 24-6322, 2025 WL 618740, at *1 (9th Cir. Feb.

26, 2025).³ Eligibility to simply earn credits does not make a prisoner eligible to have those credits applied toward supervised release or prerelease custody. *See Gough v. Unknown Party*, No. CV-24-03034-PHX-JAT (JFM), 2025 WL 460758, at *1 (D. Ariz. Feb. 11, 2025). "The statute in question here unambiguously mandates that only inmates with low and minimum recidivism scores are eligible to have earned time credits under the FSA applied toward pre-release custody or supervised release." *Purdy v. Carter*, BAH-24-582, 2024 WL 4651275, at *5 (D. Md. Nov. 1, 2024); *see* 18 U.S.C. § 3624(g)(1)(D). Petitioner characterizes this requirement as BOP's policy and practice. (Doc. 1 at 6-7.) But "BOP's use of the PATTERN tool to restrict application of FSA credits to prisoners with minimum or low risk recidivism scores does not amount to an agency's 'interpretation' of a statute." *Purdy*, 2024 WL 4651275, at *5. Indeed, Petitioner's "challenge is to the *statute*, not the regulation." *Id.*; *Gough*, 2025 WL 460758, at *2. Therefore, Petitioner's reliance on *Loper Bright* is misplaced. *Tennigkeit*, 2025 WL 618740, at *1. According to the plain language of the FSA, Petitioner is ineligible to have his credits applied to his sentence because of his recidivism level.

Petitioner also asserts that under the FSA, prisoners should begin earning credits from the time they were sentenced, even if they have not yet arrived at their designated facility. (Doc. 1 at 8); *see* 28 C.F.R. § 523.42(a). While Petitioner asks that BOP recalculate his release date to include ETCs from the time that he was sentenced until he arrived at his designated facility, he has not shown that participated in any programming during that period of time. (*See* Doc. 1.) Courts around the country have differed on whether prisoners should receive ETCs for the time between sentencing and arrival at their designated facility. *See Heath v. Knight*, No. 22-7270 (RMB), 2024 WL 5198863, at *5 (D. N.J. Dec. 23, 2024) (collecting cases holding that 28 C.F.R. § 523.42(a) is invalid); *cf. Stinson v. Martinez*, NO. 2:23-cv-0751, 2024 WL 4969169, at *7 (W.D. La. Nov. 12, 2024) (holding that the regulation is valid under the FSA), *report and recommendation adopted*, 2024 WL

---

³ And to the extent that Petitioner attempts to challenge the BOP's assessment of his recidivism risk level, such an attempt "is not reviewable in a § 2241 habeas petition." *Tennigkeit*, 2025 WL 618740, at *1 (citing *Reeb*, 636 F.3d at 1226-28).

4965618 (W.D. La. Dec. 3, 2024). But here, "it appears that [Petitioner] is seeking [ETCs] simply because he was sentenced and in federal custody as of that date." *Akhatsegbe v. Greene*, No. 1:24-cv-01871, 2025 WL 297699, at *4 (M.D. Pa. Jan. 24, 2025) (citing *Stevens v. Jacquez*, No. 3:23-cv-01482, 2024 WL 3200546, at *4 (D. Or. June 25, 2024) (internal quotations omitted)).

The FSA plainly states that prisoners may earn credits for "successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(i). However, Petitioner has not shown that he participated at all in any such programs or activities from the time he was sentenced until he arrived at his designated facility.[4] (*See* Doc. 1); *cf. Heath*, 2024 WL 5198863, at *1 ("Petitioner spent seven months preceding his arrival at Fort Dix in various county jails and BOP facilities doing as many Productive Activities as he possibly could."). Therefore, Petitioner could not have earned any credit during that period under the language of the statute.

Should the Court reach the merits of the Petition, undersigned recommends that the Petition be denied for the reasons above.

## RECOMMENDATION

As discussed above, Petitioner is statutorily ineligible for relief due to his offense of conviction. But should the Court reach the merits of the Petition, Petitioner's claims fail under the plain language of the First Step Act. For the foregoing reasons,

**IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) be **DENIED** and **DISMISSED WITHOUT PREJUDICE.**

## EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The

---

[4] As Respondent correctly notes, the FSA requires that each prisoner be assessed to "determine the type and amount of evidence-based recidivism reduction programming that is appropriate" to that specific prisoner. 18 U.S.C. § 3632(a). Only then can the Bureau of Prisons assign specific programming to that prisoner. *See id.* A prisoner is not instantaneously assessed at the time of sentencing.

parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 1st day of April, 2025.

_____
Honorable Alison S. Bachus
United States Magistrate Judge